**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MICHAEL WELLS,

       Plaintiff,

                                         CASE NO. 07-15500
v.                                                HON. LAWRENCE P. ZATKOFF

SECURITAS SECURITY SERVICES
USA, INC. and THE UNIVERSITY
OF MICHIGAN,

       Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on March 26, 2009

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter comes before the Court on Defendants' respective motions for summary judgment [dkt 27 & 28]. The parties have fully briefed the motions. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons set forth below, Defendant Securitas Security Services' motion for summary judgment is GRANTED, and Defendant The University of Michigan's motion for summary judgment is GRANTED.

Also before the Court is Plaintiff's motion for leave to file a sur-reply brief [dkt 39]. In this

motion, Plaintiff contends that Securitas's reply brief to its motion for summary judgment "contains multiple misstatements of fact and law." Defendants respond that the Federal and Local Rules do not contemplate sur-reply briefs, that Plaintiff's proposed sur-reply is redundant of his initial responses, and that Plaintiff's proposed sur-reply brief exceeds the page limitation imposed on reply briefs by E.D. Mich. L.R. 7.1. Because this matter is before the Court on summary-judgment motions filed by Defendants, the Court must construe all facts in favor of Plaintiff as the non-moving party. Therefore, Plaintiff's concerns of factual misstatements are immaterial, and the Court finds no other compelling reason to consider Plaintiff's sur-reply brief. Accordingly, Plaintiff's motion for leave to file sur-reply brief is HEREBY DENIED.

## II. BACKGROUND

Securitas provides private security officers to clients throughout the United States. Securitas's predecessor hired Plaintiff as a security officer in 2000. Generally, prior to assigning its employees to a client, Securitas sends its employees to interview with the client. If the client finds the employee to be satisfactory, the employee is assigned to that client. Pursuant to that process, Plaintiff was assigned to the central power plant of the University of Michigan in the fall of 2002. In December 2002, Plaintiff was promoted to the position of site supervisor for the central power plant.

In January 2006, an employee of the University named Gerald Avery sexually assaulted another employee of the University, Katherine McCarty. McCarty reported the assault in March of that same year. The University of Michigan investigated the incident and ultimately suspended Avery for one month without pay, demoted his position, transferred him to another plant, and

entered into a "Last Chance Settlement Agreement" with Avery whereby the latter was "not to make any effort to contact, talk to or otherwise seek out [McCarty]." At that time, Avery was the chief steward for his union, Local 547, International Union of Operating Engineers–a position that apparently required him to visit the central power plant periodically.

On April 4, 2007, Plaintiff encountered McCarty in an agitated state. McCarty informed Plaintiff of Avery's 2006 assault against her. She further informed Plaintiff that she had seen Avery on the premises of the power plant earlier that morning. McCarty, however, misrepresented the terms of the Last Chance Settlement Agreement to Plaintiff, indicating that Avery was not permitted at the central power plant while McCarty was on the premises. McCarty indicated to Plaintiff that she had seen Avery at the power plant on several other occasions and that his presence upset her.

Plaintiff contacted the University's Department of Public Safety ("DPS") on behalf of McCarty. At that time, he had not independently verified the actual terms of the Last Chance Settlement Agreement. It is not entirely clear what Plaintiff conveyed to DPS during his initial phone call but approximately one week later, DPS Officer Kevin Rice came to the power plant to speak with McCarty about the incident. Plaintiff was present during the meeting between Rice and McCarty but did not contribute to it. DPS had not previously known about the 2006 assault and, after an investigation, Avery was convicted of a charge of aggravated assault.

On April 13, 2007, DPS Detective Mike Mathews issued Avery a "No Contact Order" pursuant to which he was forbidden from entering the central power plant or otherwise being in McCarty's presence for the duration of the DPS investigation. McCarty told Plaintiff about the No Contact Order on April 16, 2007. Plaintiff, in turn, attempted to contact individuals through the chain of command. Finding no one available, Plaintiff ultimately contacted the University's

Associate Director of Utilities, William Verge, so that the power plant's post orders would reflect that Avery was not to be permitted on site. Verge was apparently upset that he had not been informed of this fact by the power plant's manager, Richard Wickboldt, such that Verge "got in [Wickboldt's] face about it" and "read Wickboldt the riot act."

At some point after Plaintiff's discussion with Verge, Securitas's branch manager, Diane Logan, informed Plaintiff that Wickboldt was upset with him because he got him into trouble with Verge. Another security guard at the power plant, Leonard Pagel, observed Wickboldt casting ominous looks at Plaintiff. On approximately April 27, 2007, Wickboldt emailed Logan to inform her of new chain-of-command procedures regarding whom security officers should approach in Wickboldt's absence. Wickboldt also met with Logan and requested that Plaintiff be removed from the power plant. On that same day, Logan informed Plaintiff that he would be removed from the power plant.

Karen Triplett, Securitas's scheduler, offered Plaintiff four other assignments, including a demotion at the power plant. None of the alternatives involved supervisory positions, and three of the alternatives required Plaintiff to take a pay reduction. The sole alternative that would have compensated Plaintiff at the same rate was a temporary position that might not have exceeded 30 days. Plaintiff declined these positions and worked his last day at the power plant on September 20, 2007.

On September 25, 2007, Plaintiff embarked on an out-of-state vacation. While he was out of town, his mother checked his mail and discovered a letter from Belinda Hamilton, Securitas's human resources manager, assigning Plaintiff to a new position effective October 1, 2007. Plaintiff called Triplett and informed her that he would not be able to begin work on October 1. He left a

voice message to the same effect with Hamilton on the morning of October 1. On October 3, Securitas terminated Plaintiff's employment for consecutive unexcused work absences. Plaintiff had not interviewed or interacted with representatives at his prospective new site at any time.

Plaintiff now brings suit alleging that Defendants, as joint employers, retaliated against him in violation of Title VII of the Civil Rights Act of 1964. Specifically, Plaintiff contends that he opposed a violation of the Act and suffered an adverse employment action as a result.

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Although all inferences must be drawn in favor of the nonmoving party, this Court bears no obligation to imagine favorable facts where the nonmoving party has alleged none. The moving party must also set forth facts sufficient to establish its case: "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

Securitas argues that Plaintiff is unable to establish a prima facie case of a retaliation claim because he did not engage in an activity protected by Title VII. Even if Plaintiff's involvement amounted to a protected activity, Securitas argues that Plaintiff did not "oppose" any Title VII violation. Securitas further contends that Plaintiff reported the assault to the University, not to Securitas. As such, Securitas maintains that it was not aware of Plaintiff's alleged "opposition" to a Title VII violation. Securitas points to the alternative positions offered to Plaintiff as evidence that he suffered no adverse employment action. Finally, Securitas takes the position that, even if Plaintiff establishes a prima facie case, the University was entitled to request officer reassignment and that alone provides a sufficient non-discriminatory reason for Plaintiff's transference.

Plaintiff responds that he did engage in a protected activity by assisting McCarty and that he only needed to have a good faith belief that he was opposing sexual harassment. Plaintiff argues that Securitas knew of his protected activity but nevertheless subjected him to an adverse employment action by removing him from the power plant and offering unacceptable alternatives. Finally, Plaintiff maintains that Securitas's proffered non-discriminatory reasons for his termination are pretextual.

To survive Defendants' motions for summary judgment, Plaintiff must establish a prima facie case of discrimination. If Plaintiff succeeds in establishing a prima facie case of retaliation, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason to justify its action and to rebut Plaintiff's prima facie case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). After the employer offers such evidence, the burden returns to Plaintiff to prove by a preponderance of the evidence that the legitimate reason set forth by the employer was mere

pretext for discrimination. *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 548 (6th Cir. 1998).

A prima facie case of retaliation under Title VII requires Plaintiff to establish that: "(1) [he] engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, . . . and (4) there was a causal connection between the protected activity and the adverse employment action." *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). Establishing a prima facie case is "the first prong of analysis which defeats a motion for dismissal prior to trial." *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997). Plaintiff's burden at the prima-facie stage of proceedings "is minimal, requiring [him] to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence, providing it is credible." *Id.* Still, Plaintiff, in this Title VII action, "has the burden of proving by the preponderance of the evidence a prima facie case of discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981).

Under Title VII, an individual engages in a protected activity when he "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The federal courts "have generally granted less protection for opposition than for participation in enforcement proceedings." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989). For Plaintiff to engage in a protected opposition activity under Title VII, he "must make an overt stand against suspected illegal discriminatory action." *Comiskey v. Auto. Indus. Action Group*, 40 F. Supp. 2d 877, 898 (E.D. Mich. 1999). Therefore, "a vague charge of discrimination . . . is insufficient to constitute

opposition to an unlawful employment practice." *Booker*, 879 F.2d at 1313. At the same time, opposition "need not rise to the level of a formal complaint in order to receive statutory protection." *Allen v. Advanced Digital Info. Corp.*, 500 F. Supp. 2d 93, 109 (N.D.N.Y. 2007). There is no exhaustive list of opposition activities, but they include "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990).

Here, Plaintiff alleges that he "opposed" sexual harassment in a number of ways, thereby entitling him to the protections of Title VII. Although it is not entirely clear what Plaintiff conveyed to DPS during his phone call, the Court construes the facts of the matter in his favor for the purpose of Defendants' summary-judgment motions. Therefore, the Court accepts as true that Plaintiff was reporting in good-faith what he believed was an incident of sexual harassment. Plaintiff also prepared a brief incident report in which he wrote that Avery "was in the building . . . in violation of an agreement that was made with the Human Resources dept., which states that Gerald Avery isn't supposed to be in the building when Katherine McCarty is." Also in the report, which Plaintiff submitted to both a University contact and his superior within Securitas, Plaintiff wrote that he left a message for DPS "in accordance with the Securitas Security Officer Handbook section on Reporting Unsafe Conditions and Security Risks." Plaintiff did not mention harassment in the incident report. Finally, at the request of McCarty, Plaintiff was present when Officer Rice interviewed her but he did not contribute to the interview. Plaintiff also submits that his phone call informing Verge that Avery was banned from the power plant was an act of opposition. These actions, however, do not constitute opposition to an unlawful employment practice.

In *Sawicki v. American Plastic Toys, Inc.*, 180 F. Supp. 2d 910 (E.D. Mich. 2001), the plaintiff brought suit for retaliation, alleging that her employment was terminated for "protesting the alleged sexual harassment of co-workers and subordinates by another employee." *Id.* at 912. In that case, the plaintiff learned that four female employees had been subjected to harassment by a co-worker. Having access to a typewriter, "the plaintiff typed up the complaint, the subordinates signed the complaint, and the plaintiff delivered the complaint to the defendant . . . . The plaintiff also mailed a copy of the complaint to . . . the human resources manager." *Id.* at 913. The company commenced an investigation as a result of the complaint and interviewed the plaintiff, who indicated that she had witnessed one incident of potential harassment but "could offer no further first-hand knowledge of Taylor's misconduct." *Id.* In *Sawicki*, the plaintiff failed to "offer some evidence that she actually opposed the misconduct." *Id.* at 916. Therefore, the court held that the plaintiff's conduct did not amount to "opposition":

> [I]t could not have been clear to management that the plaintiff intended to file suit on behalf of her subordinates, or that she personally opposed the misconduct. It was plaintiff's duty as a supervisor who was approached by her subordinates with a complaint to take action, investigate or send the complaint up the line of authority. That conduct, however, cannot constitute "opposition" on this record.

*Id.* at 919. In this case, Plaintiff merely called DPS to facilitate McCarty's complaint, an action explicitly required of him in his capacity as security guard. Like the actions of the plaintiff in *Sawicki*, Plaintiff's actions did not indicate personal opposition to perceived sexual harassment. *See Moore v. City of Philadelphia*, 461 F.3d 331, 350 (3d Cir. 2006) ("If litigants claim to be retaliated against for having opposed discrimination, they must have stood in opposition to it–not just objectively reported its existence or attempted to serve as an intermediary."). Therefore, the Court

9

finds that Plaintiff's actions in this matter do not amount to opposition under Title VII and therefore, his prima facie case of retaliation necessarily fails.

Even if Plaintiff's actions could be considered "opposition," he would not be able to establish the causation element of the prima facie case. Construing the facts of the case in the light most favorable to Plaintiff, the Court finds that Wickboldt wanted Plaintiff removed from the power plant because Plaintiff got Wickboldt into trouble by contacting Verge directly. There is no indication that Wickboldt's displeasure had anything to do with the fact that Plaintiff allegedly reported an instance of potential sexual harassment.

The record reveals that both Defendants treated Plaintiff unfairly. The facts of the case establish that Plaintiff was dutiful and vigilant in carrying out the responsibilities of his position as security guard. In attempting to follow the chain of command regarding what Plaintiff in good faith believed to be a serious security concern, Plaintiff inadvertently got Wickboldt in trouble with a supervisor and immediately thereafter, Wickboldt asked that Plaintiff be reassigned. That the University of Michigan removed Plaintiff from his position for his attentiveness to McCarty's wellbeing is appalling. That Securitas did not present Plaintiff with a suitable replacement opportunity is equally appalling. Finally, that Securitas terminated Plaintiff's employment despite the fact that he informed Securitas of his vacation and despite the fact that Securitas did not follow its typical interviewing process is a gross disservice to an employee who did nothing wrong. Plaintiff very well may have legal recourse on an alternate theory of recovery. Unfortunately for Plaintiff, however, he is unable to establish a prima facie case for retaliation under Title VII. Specifically, Plaintiff's actions with respect to McCarty do not amount to "opposition" of an unlawful employment practice. Because Plaintiff cannot establish a prima facie case against either

Defendant, both motions for summary judgment must be granted.

## V.  CONCLUSION

For the above reasons, Plaintiff's motion for leave to file sur-reply brief is HEREBY DENIED.

IT IS FURTHER ORDERED that Defendants' motions for summary judgment [dkt 27 & 28] are both GRANTED.

IT IS SO ORDERED.

>S/Lawrence P. Zatkoff
>LAWRENCE P. ZATKOFF
>UNITED STATES DISTRICT JUDGE

Dated:  March 27, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 27, 2009.

>S/Marie E. Verlinde
>Case Manager
>(810) 984-3290